**SO ORDERED.**

**SIGNED this 22 day of June, 2018.**



David M. Warren
United States Bankruptcy Judge

---

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### RALEIGH DIVISION

In the Matter of:                                     **Chapter 11**
**PENNY JO HAMILTON-GAERTNER**              **Case No.: 17-00271-5-DMW**
     **Debtor**

## <u>ORDER CONFIRMING PLAN</u>

The Third Amended Plan of Reorganization under Chapter 11 of the Bankruptcy Code filed by the Debtor on March 23, 2018 (referred to herein as the "Plan"), having been transmitted to creditors with the Disclosure Statement ("Disclosure Statement"), and a hearing on confirmation of the Plan having been conducted in the United States Bankruptcy Court in Raleigh, North Carolina on May 10, 2018; and

The Court being advised, at the hearing, that the Debtor obtained the acceptance of all impaired voting classes in the Plan, and that the written objection filed by Ascentium Capital, LLC was heard; and having considered the evidence presented at the hearing, the record of the case, and arguments of counsel for the Debtor, Ascentium Capital, LLC and the Bankruptcy Administrator;

The Court holds that the Plan and the proponent comply with all requirements of 11 U.S.C. § 1129(a), and that the Disclosure Statement contains adequate information as required under 11 U.S.C. § 1125, and the court will set forth its findings of fact and conclusions of law in a forthcoming opinion; now therefore,

.

IT IS ORDERED THAT:

1.      The Disclosure Statement is APPROVED.

2.      The Plan is **CONFIRMED**. A final version of the Confirmed Plan, which incorporates all modifications and oral amendments made at the hearing on confirmation of the Plan, is attached to this Order as "Exhibit A".

3.      To the extent any language in the Plan is inconsistent with the provisions of this Order, the provisions of this Order shall govern.

4.      Except as provided in this Order, the Plan (including but not limited to Section XVII of the Plan), or in § 1141(d) of the Bankruptcy Code, the Debtor is hereby released from all dischargeable debts.

5.      All objections to claims, including requests for costs and expenses under § 506(b), fee applications, and adversary proceedings will be filed with the Court within sixty (60) days of the Effective Date, which shall be fourteen (14) days from the date of the entry of this Order.

6.      The Debtor shall file Post-Confirmation Reports with the Clerk of Court pursuant to § 1106(a)(7). Based on the Effective Date of the Order Confirming Plan, the Debtor shall file Post Confirmation Reports reporting on the succeeding quarter (ending in either March 31, June 30, September 30, or December 31), until the Plan is substantially consummated. Quarterly Reports shall reflect any progress made in consummating the Plan during the period covered by the report. Post-Confirmation Reports shall be filed in the format prescribed by the Bankruptcy Administrator. The Debtor will continue paying the quarterly fee to the United States Bankruptcy Court until the Motion for Final Decree is filed.

7.      Within thirty (30) days of substantial consummation of the Plan, as defined by § 1101(2), the Debtor shall file a final report, in a format prescribed by the Bankruptcy Administrator, reflecting the payments made for all costs of administration and each class of creditors, and a motion for the entry of a Final Decree pursuant to Rule 3022 of the FEDERAL RULES OF BANKRUPTCY PROCEDURE.

8.      The Debtor shall pay to the Clerk, United States Bankruptcy Court, the sum of $0.00 for court costs.

9.      The Debtor shall serve a copy of this Order on all creditors within five (5) days of the entry of this Order and promptly file a Certificate of Service with the Clerk.

**END OF DOCUMENT**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

In the Matter of:                                    **Chapter 11**
**PENNY JO HAMILTON-GAERTNER**            **Case No.: 17-00271-5-DMW**
      **Debtor**

## THIRD AMENDED PLAN OF REORGANIZATION

      Pursuant to the provisions of 11 U.S.C. § 1123, the Debtor hereby submits the following Third Amended Plan of Reorganization (the "Plan"):

## I. SUMMARY OF PLAN

      The Plan contemplates a reorganization of the Debtor's obligations.  In accordance with the Plan, the Debtor intends to satisfy certain creditor claims from income earned through future wages.

      The Plan is based on the Debtor's belief that the interests of her creditors will be best served if she is allowed to reorganize her debts as described herein.

      The Debtor's liabilities will be paid according to the priorities of the Bankruptcy Code and the Orders of this Court. The specific amounts and terms of payment will be made according to the treatment of each respective creditor.

      The Plan should be read in conjunction with the Disclosure Statement. The Debtor urges Creditors and parties in interest to consult with counsel. The parties in interest should not rely on any representations not contained in the Plan or Disclosure Statement in making a determination on voting on the Plan.  A detailed discussion of the voting rights of creditors is contained in the Disclosure Statement.

## II. DEFINITIONS

      1.     "ADMINISTRATIVE CLAIM" shall mean any Claim entitled to priority under § 507(a)(1) of the Bankruptcy Code.

      2.     "ALLOWED CLAIM" shall mean (a) any Claim against the Debtor, proof of which was timely filed or by order of the Bankruptcy Court was not required to be filed; or (b) any Claim that has been listed in the Schedules as liquidated in amount and not disputed or contingent; and in each such case in (a) or (b) above, as to which either (1) no objection to the allowance thereof or other similar pleading has been filed within the applicable period, or (2) an objection or other similar pleading has been filed and the Claim has been allowed by a Final Order of the Bankruptcy Court, but only to the extent so allowed.

3.     "AVAILABLE CASH" shall mean the total cash available for distribution on the "Effective Date" (as the term is defined below).

4.     "BANKRUPTCY CODE" shall mean the United States Bankruptcy Code, Title 11 of the United States Code, as enacted in 1978 and thereafter amended.  References to "§___" herein shall refer to a section of the Bankruptcy Code, 11 U.S.C. § 101, et seq.

5.     "BANKRUPTCY RULES" shall mean the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to Chapter 11 cases.

6.     "CLAIM" shall mean a duly listed or a timely filed Allowed Claim which is allowed and ordered to be paid by the Court.

7.     "CLASS" shall mean any one of the Classes of Claims or Interests designated in Article III of the Plan.

8.     "CONFIRMATION DATE" shall mean the date of entry by the Court of an order confirming the Plan at or after a hearing pursuant to 11 U.S.C. § 1129.

9.     "CONFIRMATION HEARING" shall mean the hearing conducted by the Court regarding confirmation of the Plan pursuant to 11 U.S.C. § 1129.

10.     "CONFIRMATION ORDER" shall mean the order of the Court confirming the Plan.

11.     "COURT" shall mean the United States Bankruptcy Court for the Eastern District of North Carolina, including the United States Bankruptcy Judge presiding in the Chapter 11 case of the Debtor.

12.     "CREDITORS" shall mean all creditors of the Debtor holding claims for unsecured debts, liabilities, demand or claims of any character whatsoever.

13.     "DEBTOR" shall mean Penny Jo Hamilton-Gaertner.

14.     "DISBURSING AGENT" shall mean the Debtor or that person selected by the Court who shall perform the duties and have the rights and obligations described herein.

15.     "DISCLOSURE STATEMENT" shall mean the Disclosure Statement describing this Plan prepared in accordance with §1125 and approved by order of the Bankruptcy Court, to be distributed to the holders of claims whose votes with respect to this Plan are to be solicited.

16.     "DISPUTED CLAIM" shall mean any claim (a) that is scheduled by the Debtor as disputed, contingent or unliquidated, or (b) that is scheduled by the Debtor, or proof of which has been filed with the Bankruptcy Court and with respect to which a timely objection to allowance, in whole or in part, has been filed and which objections have not been (i) withdrawn or settled, or (ii) determined by a Final Order.

17.     "DISTRIBUTION DATE" shall mean the date on which distributions are to be made under the Debtor's Plan.

18.     "ESTATE" or "BANKRUPTCY ESTATE" shall mean all legal or equitable interests of the Debtor in property, whether personally held or not, at the time of the Debtor's bankruptcy filing.

19.     "EFFECTIVE DATE" shall be that date on which the Confirmation Order becomes final and non-appealable.

20.     "FINAL DECREE" shall mean the order of this Court pursuant to FEDERAL RULE OF BANKRUPTCY PROCEDURE 3022 closing this case.

21.     "FINAL ORDER" shall mean an order of the Court that has been entered and either (a) the time for appeal from such entered order has expires; or (b) any appeal that has been timely filed has been dismissed or otherwise finally determined.

22.     "GENERAL UNSECURED CLAIM" shall mean any claim, whether or not liquidated or contingent, other than a priority claim, administrative claim, or secured claim.

23.     "IMPAIRED" classes of creditors are those whose claims or interests are altered by the Plan, or who will not receive under the Plan the allowed amount of their claims in cash as of the "Effective Date" (as defined above).

24.     "PETITION DATE" shall mean January 18, 2017.

25.     "PLAN" shall mean this Plan of Reorganization in its present form or as it may be amended or modified.

26.     "PRIORITY CLAIM" shall mean any claim to the extent entitled to priority in payment under § 507.

27.     "PRO-RATA" shall mean the amount of cash or property to be paid or distributed to a claimant with respect to an Allowed Claim on a particular date, in accordance with the ratio, as of such date, of the dollar amount of the Allowed Claim of such person in the indicated class to the aggregate dollar amount of Claims in the indicated class (including, in each such calculation, the full amount of Disputed Claims in the class which have been asserted or are otherwise pending and which have not yet been allowed or otherwise disposed of).

28.     "SALE" shall mean the disposition of certain assets of the Debtor through a transfer of ownership from the Debtor to another person or entity as set forth in this Plan.

29.     "SALE PROCEEDS" mean the remaining funds of a sale of certain assets of the Debtor as set forth in this Plan, after payment of all reasonable and ordinary closing costs, (including but not limited to ad valorem taxes, commissions and any other costs permitted under 11 U.S.C. § 506(c)).

30.     "SECURED CREDITORS" shall mean all creditors who hold a lien, security interest or any other encumbrance which have been properly perfected as required by law with respect to property owned by the Debtor, to the extent of the value of the collateral.

31.     "SUBSTANTIAL CONSUMMATION" shall mean the time the reorganized Debtor has commenced the distribution of initial Plan payments to all creditor classes.

32.     "TAX CLAIM" shall mean any claim entitled to priority in treatment pursuant to 11 U.S.C. § 507(a)(8).

## III.  CLASSIFICATION AND TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

The Debtor classifies the following classes of claims, indicating whether said Class is impaired or unimpaired, and proposes the following treatment:

**A**.     **Class 1 - Administrative Costs:**

(1)     Description of Claims.  Class 1 consists of claims for any cost or expense of administration pursuant to 11 U.S.C. §§ 503, 506, and 507.

The following Claims of professionals will be paid subject to Court approval:

| Professional | Services Provided | Amount Owed |
|---|---|---|
| The Law Offices of Oliver & Cheek, PLLC | Attorney for the Debtor | To be determined by the Court |
| Holden Moss Knott Clark & Copley, P.A. | Accountant for the Debtor | To be determined by the Court |

(2)     Impairment.    This class will be impaired.

(3)     Treatment.     Administrative costs and expenses approved by the Court shall be paid in cash and in full including accruals to date of payment within ten (10) days from the Effective Date of the Plan or upon entry of an Order allowing such Administrative Claim, whichever is later, except that professional fees shall be paid in full upon entry of an Order allowing the same, or pursuant to any agreement between the Debtor and the holder of a Class 1 Allowed Claim.

In the event that funds are not available to pay such costs and expenses within ten (10) days of the Effective Date of the Plan, then each holder of such a claim that agrees to receive payments over time will receive payments from the Debtor until paid in full.  Such Claims remaining unpaid ten days following the Effective Date shall accrue interest at a rate of four percent (4%) per annum.

**B.**     **Class 2 – Ad Valorem Taxes:**

(1)     Description of Claims.  Class 2 consists of Claims for taxes owed by the Debtor to any city, county, or other municipality or taxing entity entitled to tax the property of the Debtor

based upon the value of the property assessed. *The Debtor is unaware of any Claim(s) in this Class:*

     (2)    <u>Impairment</u>.    This class will be unimpaired.

     (3)    <u>Treatment</u>.    The Debtor proposes to pay Claims in this class with annual payments over a period of five (5) years from the Date of the Order of Relief. Annual payments shall commence on fifteenth day following the first full month after the Effective Date and shall continue every consecutive year thereafter, and shall include interest at the applicable rate imposed by the tax collector until paid in full. The Debtor may also satisfy Claims in this class in whole or in part through the sale or foreclosure of real property or have a secured creditor pay the taxes in the event real property is surrendered to the secured creditor.

Ad valorem taxes for the current tax year may be treated as a prepetition claim and not as an administrative expense. *See <u>In Re St. Lawrence Homes, Inc.</u>, Case No. 09-00775-8, Order dated July 28, 2010, citing <u>In Re Members Warehouse, Inc.</u>, 991 F.2d 116, 118-119 (4th Cir. 1993).*

    **C.**    <u>**Class 3 – Tax Claims:**</u>

     (1)    <u>Description of Claims</u>.   Class 3 consists of claims against the Debtor for income taxes, withholding taxes, unemployment taxes and/or any and all other taxes levied or entitled to be levied against the Debtor by the Internal Revenue Service or the North Carolina Department of Revenue plus interest as allowed by law. *The Debtor is unaware of any Claim(s) in this class.*

     (2)    <u>Impairment</u>. This class will be unimpaired.

     (3)    <u>Treatment</u>.   The Debtor proposes the following treatment:

    **Costs and expenses of administration**, if any, shall be paid in cash and in full including accruals to date of payment within thirty (30) days from the Effective Date. The Debtor does not anticipate that any such claims will be filed.

    **Unsecured priority tax claims**, if any, described in Bankruptcy Code § 507(a)(8) shall be paid in full in quarterly installments over a period not exceeding five (5) years from the Petition Date and payments shall commence on the earlier of January 15th, April 15th, July 15th, or October 15th following the Effective Date and shall continue quarterly thereafter, with interest at the statutory rate as of the Effective Date. The Debtor does not anticipate any such claims will be filed.

    In the event that the Debtor fails to timely make a required payment as to any claim of the North Carolina Department of Revenue (the "Department"), then, subject to a ten (10) day right to cure following written notice of default from the Department, the Department shall be permitted to exercise any and all of its collection remedies under non-bankruptcy law as to any and all of its claims without further order of the Court. The rights of the Department to setoff under 11 U.S.C. § 553 shall not be altered by the Plan or the confirmation order entered in this matter and are expressly reserved. The claim of the North Carolina Department of Revenue is subject to

adjustment on account of federal corrections, as required by N.C. Gen. Stat. § 105-130.20 (for corporations, LLCs and other entities) and N.C. Gen. Stat. § 105-159 (for individuals). Notwithstanding any other provisions of the Plan and the Confirmation Order, the Department shall retain any and all statutory tax liens that may have arisen by operation of statute prior to the Petition Date, except to the extent expressly stated in the Plan below.

**Unsecured general tax claims,** if any, will be treated as provided below in the section relating to "General Unsecured Claims."

### D. Class 4 – Branch Banking and Trust Company ("BB&T"):

(1)     Description of Debt.   On or about April 25, 2007, the Debtor and her non-filing spouse (collectively the "Borrowers") executed a Retail Note and Security Agreement ("Note") in the original principal amount of $224,500.00 with a fixed rate of interest at 7.900%.   The Note was secured by a Deed of Trust recorded in the Wake County Registry Book 12545 at Pages 2378 through 2383.   The property securing the Note is commonly known as 580 Vista del Lago Lane, Wake Forest, North Carolina.   On May 10, 2012, the Borrowers executed a modification of the Note whereby the interest rate was modified to 5.740%.   On January 24, 2017, BB&T filed Claim 1 alleging to be owed $162,801.45.

(2)     Impairment.   This class will be impaired.

(3)     Treatment.       This obligation shall be treated as a fully secured obligation and will be paid according to its contractual provisions. BB&T shall retain its lien with the priority thereof, as existed on the Petition Date pursuant to Bankruptcy Code § 1129(b)(2)(A)(i)(I), until the secured portion of this claim is paid in full.   The Debtor shall maintain the ongoing contractually due payments on the claim.   The Debtor shall reinstate any arrearage as exists as of the date of confirmation of the plan through twenty-four (24) equal payments beginning the first full month after confirmation of the plan.   The arrearage will be verified as of the date of confirmation and adjusted if necessary.   BB&T's attorney fees and costs shall be added to the claim of BB&T.   All other provisions of the Note and Deed of Trust shall remain in full force and effect.   The Debtor shall maintain taxes and insurance on the property.   Upon confirmation of the plan, the automatic stay provisions of 11 U.S.C. § 362 shall be terminated as to the Creditor.   The Creditor shall send regular billing statements to the Debtor.   In the event that the Debtor misses any ongoing payments, BB&T is free to proceed to exercise its rights under the security documents. All other provisions of the security documents, except specifically changed remain in full force and effect.

### E.     Class 5 – HSBC Bank USA:

(1)     Description of Debt.   On or about July 11, 2006, the Debtor and her non-filing spouse (collectively the "Borrowers") executed an Fixed/Adjustable Rate Note ("Note") in favor of CTX Mortgage Company, LLC in the original principal amount of $820,000.00 with an initial rate of interest of 8.25%.   On April 10, 2007 the Borrowers executed a Loan Modification Agreement setting the rate of interest for 5 years at 6.5%. The Note was secured by a Deed of Trust recorded in the Wake County Registry Book 12065 at Pages 1 through 26.   The property securing the Note is commonly known as 580 Vista del Lago Lane, Wake Forest, North Carolina.   On

February 7, 2007 CTX Mortgage Company, LLC assigned the loan and loan documents to USBC Bank USA, National Association as Trustee for JP Morgan Trust. HSBC Bank USA filed Proof of Claim 18. The amount of the claim is illegible in the Proof of Claim. Upon information and belief, the Debtor believes HSBC is owed approximately $668,247.40.

       (2)    <u>Impairment</u>.   This class will be impaired.

       (3)    <u>Treatment</u>.     This obligation shall be treated as a fully secured obligation equal to all amounts due contractually per the terms of the Note and Deed of Trust. The creditor shall retain its lien with the priority thereof as existed on the Petition Date pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code until its claim is paid in full. The Debtor shall maintain the ongoing payments on the claim. The ongoing payment amount currently is $4,003.28 (which is subject to change). The Debtor shall reinstate any arrearage as exists as of the date of confirmation of the plan through 8 equal payments beginning the first full month after confirmation of the plan. The Claim shall be treated as in forbearance status until the completion of the reinstatement set forth in this paragraph. It is anticipated that the reinstatement payments shall be in the amount of $495.19 which is based upon the current delinquency of $3,961.52 divided over 8 months. Thus, the total amount due during this forbearance period shall be approximately $4,498.47. The arrearage will be verified as of the date of confirmation and adjusted if necessary. All other provisions of the Note and Deed of Trust shall remain in full force and effect. Upon confirmation of the plan, the automatic stay provisions of 11 U.S.C. § 362 shall be terminated as to the Creditor. The Creditor may send regular billing statements to the Debtor.

      **F.**    **<u>Class 6 – Disney Vacation Development:</u>**

       (1)    <u>Description of Debt</u>. The Debtor is aware of the following debts:

          (a)    <u>Animal Kingdom Villas</u>:    On or about April 13, 2012, the Debtor and her non-filing spouse (collectively the "Borrowers") executed a Note in the original principal amount of $44,370.00 with a variable rate of interest of 11.75%. The Note was secured by a short-form mortgage agreement recorded in Deed Book 10367 at Page 4034 of the Orange County Florida Comptroller's Official Records Department. In exchange for the Note, the Borrowers were deeded an undivided 1.4734% interest in Unit 60D of Disney's Animal Kingdom Villas, which property serves as the collateral for the Note. Disney Vacation Development, Inc. filed Claim 14 alleging to be owed $29,986.41 on this obligation.

          (b)    <u>Polynesian Villas & Bungalows</u>:    On or about April 10, 2015, the Debtor and her non-filing spouse (collectively the "Borrowers") executed a Note in the original principal amount of $29,700.00 with a variable rate of interest of 11.00%. The Note was secured by a short-form mortgage agreement recorded in Deed Book 10908 at Page 3287 of the Orange County Florida Comptroller's Official Records Department. In exchange for the Note, the Borrowers were deeded an undivided 0.3380% interest in Unit 15 of Disney's Polynesian Villas & Bungalows, which property serves as the collateral for the Note. Disney Vacation Development, Inc. filed Claim 13 alleging to be owed $26,793.24.

       (2)    <u>Impairment</u>.   This class will be impaired.

        (3)     <u>Treatment</u>.

        (a)     <u>Animal Kingdom Villas</u>:    This obligation shall be treated as a fully secured obligation in an amount equal to (a) the outstanding principal and interest due on the Petition Date; plus (b) interest accrued through the Effective Date at the contractual non-default rate of interest; plus (c) costs and expenses approved by the Court pursuant to 11 U.S.C. § 506(b); less (d) all post-petition payments. Disney Vacation Development shall retain its lien with the priority thereof, as existed on the Petition Date pursuant to Bankruptcy Code § 1129(b)(2)(A)(i)(I), until the secured portion of this claim is paid in full. This obligation shall be amortized over a period of five (5) years, with interest at four and three quarters (4.75%) percent per annum from and after the Effective Date.  Payments will begin on the fifteenth (15th)  day of the first full month following the Effective Date of the Plan.  For feasibility purposes, the Debtor estimates the monthly payment will be $562.45. The Debtor's spouse is a co-obligor on this debt and will make these payments.

        Upon confirmation, this loan shall be deemed to be in a current and/or non-default status. The lender shall send regular billing statements to the Debtor.  No charges shall be added to this account due to the Chapter 11 bankruptcy or any events that occurred prior to confirmation of this Plan.

        (b)     <u>Polynesian Villas & Bungalows</u>:    This obligation shall be treated as a fully secured obligation in an amount equal to (a) the outstanding principal and interest due on the Petition Date; plus (b) interest accrued through the Effective Date at the contractual non-default rate of interest; plus (c) costs and expenses approved by the Court pursuant to 11 U.S.C. § 506(b); less (d) all post-petition payments. Disney Vacation Development shall retain its lien with the priority thereof, as existed on the Petition Date pursuant to Bankruptcy Code § 1129(b)(2)(A)(i)(I), until the secured portion of this claim is paid in full. This obligation shall be amortized over a period of eight (8) years, with interest at four and three quarters (4.75%) percent per annum from and after the Effective Date.  Payments will begin on the fifteenth (15th) day of the first full month following the Effective Date of the Plan.  For feasibility purposes, the Debtor estimates the monthly payment will be $ 336.02. The Debtor's spouse is a co-obligor on this debt and will make these payments.

        Upon confirmation, this loan shall be deemed to be in a current and/or non-default status. The lender shall send regular billing statements to the Debtor.  No charges shall be added to this account due to the Chapter 11 bankruptcy or any events that occurred prior to confirmation of this Plan.

### G.    <u>Class 7 – Lendmark Financial Service, LLC ("Lendmark"):</u>

        (1)     <u>Description of Debt</u>.  On or about July 8, 2015, the Debtor executed a Purchase Money Security Interest Note ("Note") in the original principal amount of $13,724.56 with a fixed rate of interest of 18.119%.  As collateral for the Note, Lendmark took a lien in the Debtor's 2008 Toyota Sequoia with VIN 5TDBY67A58S007974.  Lendmark filed Claim 16 alleging to be owed $14,002.06.

(2)    _Impairment_.    This class will be impaired.

(3)    _Treatment_.  This obligation shall be treated as a secured obligation in an amount equal to the outstanding principal and interest due on the Petition Date less all post-petition payments.  Lendmark shall retain its lien with the priority thereof, as existed on the Petition Date pursuant to Bankruptcy Code § 1129(b)(2)(A)(i)(I), until the secured portion of this claim is paid in full. This obligation shall be amortized over a period of five (5) years, with interest at four and one-half percent (4.5) percent per annum from and after the Effective Date.  Payments will begin on the fifteenth (15th) day of the first full month following the Effective Date of the Plan.  For feasibility purposes, the Debtor estimates the monthly payment will be $261.04.

Upon confirmation, this loan shall be deemed to be in a current and/or non-default status. The lender shall send regular billing statements to the Debtor.  No charges shall be added to this account due to the Chapter 11 bankruptcy or any events that occurred prior to confirmation of this Plan.

**H.**    **Class 8 – Local Government Federal Credit Union ("LGFCU"):**

(1)    _Description of Debt_.  On or about November 12, 2015, the Debtor executed a Purchase Money Security Interest Note ("Note") in the original principal amount of $29,509.34 with a fixed rate of interest of 4.75%.  In exchange for the Note, LGFCU sold the Debtor a 2014 Jeep Grand Cherokee with VIN 1C4RJFAG2EC106586.  LGFCU filed Claim 3 alleging to be owed $23,809.61.

(2)    _Impairment_.    This class will be impaired.

(3)    _Treatment_.  This obligation shall be treated as a secured obligation in an amount equal to the lesser of: (1) the value of the property ($18,711.00) which secures the debt; or (2) (a) all outstanding principal and interest due on the petition date; plus (b) any interest, costs and expenses which may be approved by the Court pursuant to Section 506(b); less (c) any payments made since the Petition Date.  LGFCU shall retain its lien with the priority thereof, as existed on the Petition Date pursuant to Bankruptcy Code § 1129(b)(2)(A)(i)(I), until the secured portion of this claim is paid in full. This obligation shall be amortized over a period of five (5) years, with interest at four and one-half percent (4.5) percent per annum from and after the Effective Date. Payments will begin on the fifteenth (15th) day of the first full month following the Effective Date of the Plan.  For feasibility purposes, the Debtor estimates the monthly payment will be $348.83.

The balance of $5,098.61 shall be treated in Class 11 herein.

Upon confirmation, this loan shall be deemed to be in a current and/or non-default status. The lender shall send regular billing statements to the Debtor.  No charges shall be added to this account due to the Chapter 11 bankruptcy or any events that occurred prior to confirmation of this Plan.

**I.      Class 9– Wake Emergency Physicians, P.A. 401(k) Plan c/o Fidelity Workplace Services, LLC:**

(1)      _Description of Debt_.  On or around June 4, 2013, the Debtor borrowed $50,000.00 from her 401(k) retirement account.  This loan is paid through deductions from the Debtor's regular paychecks from Wake Emergency Physicians, P.A.  On the Petition Date, the Debtor estimated that the balance on this loan was $15,399.55.

(2)      _Impairment_.    This class will be unimpaired.

(3)      _Treatment_.  Per Section 224(b) of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 and to avoid taxation under a default, this obligation shall continue to be paid under the terms of the initial obligation via payroll deduction.

**J.      Class 10 – Joint General Unsecured Obligations with Non-Filing Spouse:**

(1)      _Description of Debt_.  This Class consists of all allowed, undisputed, non-contingent unsecured claims and deficiency claims owed by the Debtor and her non-filing spouse.

(2)      _Impairment_.    This class will be impaired.

(3)      _Treatment_.    The approximate total of joint claims based on claims filed or scheduled, and projected deficiency claims, as of the date of the filing of this Plan is $58,120.32.  In accordance with the liquidation analysis attached as "Exhibit C" to the Disclosure Statement, the Debtor would be required to pay one hundred percent (100%) of these joint claims.  The Debtor proposes to pay one hundred percent (100%) of all claims in this class with interest at one and one-quarter percent (1.25%) per annum over a twenty (20) year term.  This will be paid in eighty (80) equal quarterly payments of $842.27 paid in January, April, June and September of each year and commencing on the 15th day of the first quarterly payment month following the Effective Date.  All such payments will be made on a pro-rata basis.  Because such claims are joint with the Debtor's non-filing spouse the Debtor shall have the option of accelerating such payments.

The Debtor may investigate and pursue causes of action, with the purpose of reducing claims held by the Debtor to value for distribution pursuant to the priorities of the Bankruptcy Code and future orders of this Court for the benefit of the Debtor and the Debtor's creditors.

**K.      Class 11 – General Unsecured Claims:**

(1)      _Description of Class_.  This class consists of all allowed, undisputed, non-contingent unsecured claims and deficiency claims listed in the Debtor's petition or as otherwise approved by the Court.

This class also includes all claims which are not otherwise specifically classified by this Plan. These claims shall include, but not be limited to, creditors whose claims may arise out of the rejection of executory contracts and secured creditors to the extent that the Court or the terms of this Plan deems them to be unsecured in whole or in part or to the extent that such claim may not

be specifically dealt with in the treatment of a particular class or any of these. In determining whether a claim, that is otherwise allowable, should be designated into this class as opposed to any other class in this Plan, this class is an inclusive one rather than exclusive.

(2)      Impairment.  This class will be impaired.

(3)      Treatment.  The approximate total of general unsecured claims based on claims filed or scheduled, and projected deficiency claims, as of the date of the filing of this Plan is $1,162,239.24.  In accordance with the liquidation analysis attached as "Exhibit C" to the Disclosure Statement, the Debtor would not be required to pay any amount to her general unsecured creditors through the liquation of her assets.  The Debtor proposes to pay seventy percent (70%) of all allowed general unsecured claims with interest at one and one-quarter percent (1.25%) per annum over a nine (9) year term.  This seventy percent (70%) dividend will be paid as follows (all payments will be made on a pro-rata basis):

- Thirty-six (36) equal quarterly payments of $22,512.78 paid in January, April, June and September of each year and commencing on the 15th day of the first quarterly payment month following the Effective Date; and.

- Thirty six (36) equal quarterly payments of $1,416.60 paid in January, April, June and September of each year and commencing on the 15th day of the first quarterly payment month following the Effective Date.  This represents one-half of the annual payment with interest at 1.25% of the Disney Vacation Development payments.

- If Debtor's annual gross wages for Federal Income tax purposes in any year shall be in excess of five percent (5%) over $550,000.00 ($577,500.00) the Debtor shall pay fifty percent (50%) of that excess income to Class 11 on a pro-rata basis.  Upon the request of any creditor in this Class, the Debtor within thirty (30) days of such request shall provide evidence of income to include all IRS Form 1099 and Form W-2 received by the Debtor for said calendar year.  If at the time of the request the Debtor has not been provided any or all of such evidence, the Debtor shall notify the Creditor and shall have thirty (30) days from her actual receipt of such evidence to provide the same to the requesting Creditor.  The Debtor shall also notify Creditors of any change in her address.

The Debtor may investigate and pursue causes of action, with the purpose of reducing claims held by the Debtor to value for distribution pursuant to the priorities of the Bankruptcy Code and future orders of this Court for the benefit of the Debtor and the Debtor's creditors.

**L.      Class 12 – Executory Contracts and Unexpired Leases:**

(1)      Classification.  On the Petition Date, the Debtor was a party to two executory contracts (i) Air Works Heating & Air and (ii) Wood Termite and Pest Control.

(2)    <u>Impairment</u>.    This class will be unimpaired.

(3)    <u>Treatment</u>.    Pursuant to 11 U.S.C. § 365, the Debtor hereby assumes these executory contracts.

**M.**    <u>**Class 13 – Educational Loans**</u>:

(1)    <u>Description of Class</u>.    This class consists of all educational loans within the meaning of 11 U.S.C. 523(a)(8), including the following educational loans:

- American Education Services, Claim 10 in the amount of $20,873.13
- Navient Solutions, Inc., Claim 7 in the amount of $240,416.48

(2)    <u>Impairment</u>.    This class will be unimpaired.

(3)    <u>Treatment</u>.    The Debtor shall resume payments to creditors in this Class according to the original terms of the agreements or any modifications thereto with the creditors.

## IV.  TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Except as otherwise specified in this Plan, all contracts which exist between the Debtor and any individual or entity, whether such contract be in writing or oral, which have not heretofore been rejected or heretofore been approved by Orders of the Court are hereby specifically rejected; provided, however, that this provision is not intended to reject and does not reject any agreement for the renewal or the extension of any loan or funds, presently binding and in effect between the Debtor and any secured creditor.  The Debtor hereby assumes all leases in which the Debtor is the Lessor and all shareholder agreements and operating agreements related to entities owned by the Debtor, if any.

Any person with a Claim arising from such rejection shall be deemed to hold a general unsecured claim and shall file a proof of claim within sixty (60) days of the Effective Date or be forever barred from asserting any Claim relating to such rejection.

## V.  MEANS OF IMPLEMENTATION AND EXECUTION OF PLAN

A.    The Debtor proposes to make payments under the Plan from income earned through future wages and distributions.

With respect to each claim described above in Article III, except as otherwise expressly provided in Article III, the Debtor shall keep the collateral insured pursuant to the terms of the/each security instrument (i.e., the deed of trust, mortgage, security agreement or other applicable security instrument) (herein called the "Security Instrument," whether one or more) which secures the debt.  If the Debtor fails to make a payment as provided herein within forty-five (45) days after its due date or fails to keep the collateral insured as provided herein within forty-five (45) days after written notice from the secured creditor of such failure, the secured creditor may declare the

debt in default, give notice thereof to the Debtor, and exercise its remedies against the collateral that secures the debt. The provisions of the Security Instrument that allow the secured creditor to foreclose on the collateral in the event of a default and all other provisions of the Security Instrument that relate to the collateral shall remain in effect. Any financial covenants or other covenants in any of the loan documents relating to the debt, including but not limited to the Security Instrument, that do not relate to the preservation, protection, repossession or foreclosure of the collateral shall not be effective post-confirmation.

B.    Sale Free and Clear of Liens. Any real and personal property owned by the Debtor that will be sold pursuant to this Plan will be sold free and clear of all liens, encumbrances, claims, interests, or other obligations. In order to expedite the sale process, provide clear title to the properties sold, and satisfy certain anticipated requirements of title insurance companies providing title insurance to purchasers, simultaneous with the entry of the Order Confirming Plan, the Court will enter a free and clear order, which shall provide that all sales will be free and clear of all liens, interests, and other claims or interests. All real or personal property sold by the Debtor shall be sold pursuant to the free and clear order to be entered. No further motions related to the sales of property shall be required; provided however, the Debtor may file such motions and seek such orders to the extent needed to provide reasonable comfort or accommodation to the purchaser(s) or to specify the method of distribution of the sales proceeds.

C.    Distribution of Sales Proceeds. Upon the sale of any real or personal property proposed to be sold by this Plan, the liens secured by such property shall attach to the net proceeds of sale remaining after payment of costs of sale and all reasonable and ordinary closing costs, (including but not limited to ad valorem taxes, commissions, and any other costs permitted under Section 506(c) of the Code), and shall be paid to lienholders in accordance with the priorities of such liens, and then to other creditors in accordance with the priorities of the Code. In the event the net proceeds of sale are insufficient to satisfy all claims within a class, such proceeds to be distributed to such class will be distributed pro rata. The Debtor may elect to file additional motions with the Court setting forth the proposed distribution of any excess sales proceeds prior to distribution to creditors.

D.    Preservation of Right to Credit Bid. All secured creditors shall retain the rights granted to them under § 363(k) to purchase their collateral via a credit bid upon the same or better terms of the proposed purchaser. In the event of a private sale which shall not satisfy the claim of the secured creditor(s) in full, the Debtor shall provide the secured creditor with a copy of the purchase contract in the manner designated by such creditor and such creditor shall have until no later than one hour before the Debtor's deadline for accepting such contract to inform the Debtor in writing whether it wishes to purchase the property via a credit bid upon the same or better terms than that offered by the purchaser. In the event the creditor does not provide written notification to the Debtor that it will purchase the property by credit bid, the creditor shall be deemed to waive its right to credit bid. Each secured creditor shall be responsible for providing the Debtor with information concerning the method by which it wishes to be notified to potential purchase contracts for purposes of credit bidding (i.e. fax, electronic mail, or telephonic notification).

E.    Deficiency Claims. Each secured creditor who is entitled to foreclose on its collateral under the terms of the Plan shall have 120 days after the Effective Date to complete

the foreclosure of its collateral. Each such creditor shall have 150 days following the Effective Date to file a proof of claim for any deficiency or be barred from asserting any deficiency claim and such obligation shall be deemed paid in full. Such proof of claim shall include an itemization of the principal, interest, and other costs. Any such deficiency claim shall be treated in the unsecured creditor class. In the event the Debtor obtains his Final Decree prior to the determination of any deficiency claim, such secured creditor shall inform the Disbursing Agent of such deficiency claim within the same time period. In such event, a proof of claim form shall not be required, but the secured creditor shall provide notice of such deficiency claim to the Disbursing Agent in a writing containing the same information required in a proof of claim.

      F.      <u>De Minimis Distributions</u>. No distribution of less than fifty dollars ($50.00) shall be required to be made to any holder of an allowed unsecured claim. Instead, the Debtor shall have the option of retaining such funds to be distributed at the time of the final distribution in accordance with the Plan.

      G.      <u>Unclaimed Property</u>. If any distribution remains unclaimed for a period of ninety (90) days after it has been delivered, or attempted to be delivered, such unclaimed property shall be forfeited by such holder of the claim and the Disbursing Agent shall not attempt to make any further distribution of such holder of the claim. Undistributed property shall be returned to the Debtor for distribution in accordance with the Plan. If a distribution check is not negotiated by the creditor within 90 days of the date of the check, or the distribution check is not deliverable to the creditor by way of First Class U.S. Mail, addressed to the address listed in the Creditor's Proof of Claim or on the Petition, the Debtor will be entitled to void said check and retain said funds to be used in the Debtor's discretion. Any Creditor whose funds are once not negotiated or are returned as described above shall not be part of any subsequent distribution.

      H.      <u>Preservation of Avoided Transactions for the Benefit of the Estate</u>. All transactions avoided or otherwise set aside pursuant to Sections 544, 547, 548, and/or 549, if any, shall be preserved for the benefit of the Estate pursuant to Section 551 and applicable case law. Funds received from such transactions shall be distributed to creditors according to the priorities of the Code. In the case of any lien that has been avoided which encumbered certain properties of the Debtor and has since been avoided, the lien shall remain on the public record and shall remain an encumbrance upon the real property. However, all distributions made towards such deed of trust shall be distributed not to the named beneficiary of such deed of trust, but shall instead be paid to the Disbursing Agent for distribution to creditors.

      I.      <u>Timing of Distributions</u>. Distributions under the Plan shall be made on the Distribution Date; provided however, that Court approved professionals may be paid as such fees and expenses are approved by the Court. Any distribution required to be made hereunder on a day other than a business day shall be made on the next succeeding business day. Any distribution required to be made hereunder on a day other than a business day shall be made on the next succeeding business day. The Debtor reserves the right to pay any Claim on an earlier or expedited schedule.

      J.      All payments or distributions made by the Debtor shall be applied as indicated in the respective treatment for each creditor, or if no such application of payments is specified, then

payments shall be applied first to outstanding interest and then to principal. In the event that a creditor claims that it is entitled to costs and/or attorney fees, such creditor must file a fee application with the Court and such costs and attorney fees must be approved by the Court prior to such costs and attorney fees becoming part of the creditor's allowed claim.

K.      The Debtor will execute and deliver all documentation to the Bankruptcy Court and to all parties in interest who are entitled to receive the same as required by the terms of the Plan and the Bankruptcy Code.

L.      Revocation of Plan. The Debtor has reserved the right to revoke and withdraw this Plan before the entry of the Confirmation Order. If the Debtor revokes or withdraws this Plan, or if confirmation of this Plan does not occur, then, with respect to the Debtor, this Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor, as the case may be, or any other Person or to prejudice in any manner the rights of the Debtor, as the case may be, or Person in any further proceedings involving such Debtor.

M.      The Debtor shall take such other action as necessary to satisfy the other terms and requirements of the Plan and the Bankruptcy Code.

N.      Except as expressly stated in the Plan, or allowed by a Final Order of the Bankruptcy Court, no interest, penalty, or late charge shall be allowed on any claim subsequent to the Petition Date, unless otherwise required by the Code. No attorney's fees or expenses shall be paid with respect to any claim except as specified herein or as allowed by a Final Order of the Court.

O.      Confirmation of this plan shall constitute a finding that the Debtor does not waive, release, or discharge, but rather retains and reserves any and all pre-petition claims and any and all post-petition claims that it could or might assert against any party or entity arising under or otherwise related to any state or federal statute, state or federal common law, and any and all violations arising out of rights or claims provided for by Title 11 of the United States Code, by the FEDERAL RULES OF BANKRUPTCY PROCEDURE, or by the Local Rules of this Court, including all rights to assert and pursue any and all avoidance actions, preference actions, and any other actions pursuant to 11 U.S.C. §§ 545, 546, 547, 548, and 550, except to the extent such avoidance actions, preference actions, or other actions were assigned to a creditor(s) as part of the Debtor's Plan. Further, the Debtor retains all rights to assert and pursue all claims under 11 U.S.C. § 542, including without limitation actions to seek turnover of estate assets, actions to recover accounts receivable, and/or actions to invalidate setoffs.

P.      Administrative claims unpaid on the Effective Date will be paid from funds on hand or as the parties otherwise agree.

Q.      All objections to claims, fee applications, and adversary proceedings will be filed with the Court within sixty (60) days after the Effective Date; provided however, that the Debtor retains the right to object or otherwise pursue any claims against secured creditors relating to the payoff and/or satisfaction of their secured claims.

R.    Claims Paid by Third Parties.  To the extent a claim holder receives payment in full or in part on account of such claim from a party that is not the Debtor, such creditor shall, within two (2) weeks therefore, inform the Debtor of such payment, and such creditor's claim shall be reduced accordingly for purposes of distribution under the Plan.

S.    Exemption from Transfer Taxes.  Pursuant to § 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any instrument of transfer under, in furtherance of, or in connection with the Plan, including without limitation, deeds, or bills of sale or assignments of personal property executed in connection with any of the transactions contemplated under the Plan, will not be subject to any stamp, real estate transfer, mortgage recording, sales, use, or other similar tax.  Each of the relevant state or local governmental officials or agents will forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment consistent with the applicable provisions of the Plan.

T.    Procedure for Payment of Professional Fees.  Current Court approved professionals shall not be subject to the fee application process for services rendered post-confirmation in furtherance of implementation of the confirmed Plan.

U.    Escrow Arrangements.    Unless otherwise stated in individual creditor treatments herein, the Debtor will no longer make any escrow payments for taxes, insurance, or any other expenses generally paid through escrowed funds.  The Debtor will pay such expenses directly from and after the Effective Date.  Escrowed funds held by a creditor shall be turned over to the Debtor on the Effective Date.

## VI.  PRESERVATION OF SECTION 506(c) CLAIMS

Notwithstanding confirmation of the Plan and the occurrence of the Effective Date, the Debtor shall have the right to seek recovery of the cost of maintaining and preserving any collateral or property.

## VII.  PRESERVATION OF CLAIMS AND AVOIDANCE ACTIONS

Notwithstanding anything to the contrary in the Plan or Disclosure Statement, the provisions of the Plan, Disclosure Statement, or Order Confirming Plan shall not have and are not intended to have, any res judicata or collateral estoppel effect with respect to any causes of action that the Debtor may assert, regardless of whether and to what extent such causes of action are specifically described in the Plan or Disclosure Statement.  Unless any causes of action are expressly waived, relinquished, released, compromised, or settled in the Plan or by Final Order of the Court, all such causes of action are expressly reserved and preserved for later adjudication and, therefore, no preclusion doctrine, including without limitation, the doctrines of res judicata,

collateral estoppel, issue preclusion, claim preclusion, estoppel, or laches shall apply so such causes of action upon or after confirmation of the Plan. Furthermore, notwithstanding any provision or interpretation to the contrary, nothing in the Plan or Order Confirming Plan, including the entry thereof, shall be deemed to constitute a release, waiver, impediment, relinquishment, or bar, in whole or in part, of or to any recovery or any other claim, right, or cause of action possessed by the Debtor prior to the Effective Date. This shall include, but is not limited to all pre-petition claims and any and all post-petition claims that she could or might assert against any party or entity arising under or otherwise related to any state or federal statute, state or federal common law, and any and all violations arising out of rights or claims provided for by Title 11 of the United States Code, by the Federal Rules of Bankruptcy Procedure, or by the Local Rules of this Court, including all rights to assert and pursue any and all avoidance actions, preference actions, and any other actions pursuant to 11 U.S.C. §§ 545, 546, 547, 548, 550, and 542, including without limitation actions to seek turnover of estate assets, actions to recover accounts receivable, and/or actions to invalidate setoffs.

## VIII. SIMILAR TREATMENT FOR EACH CLAIM WITHIN A CLASS

The claims stated herein, by modification, Court Order, or other legally appropriate manner, may be modified throughout the course of payment under this Plan. The Debtor, upon full payment as called for under the notes and deeds of trust, shall be entitled to have the note marked paid and satisfied and the deed of trust canceled as a matter of record, by the Trustee, or by appropriate application to this Bankruptcy Court, and upon a showing that the full amount of the monthly payments were made by the Debtor.

## IX. PROVISIONS GOVERNING DISTRIBUTIONS

A.    <u>Delivery of Distributions in General</u>.  Distributions to holders of allowed claims shall be made: (i) at the addresses set forth in the proofs of claim filed by such holders; (ii) at the addresses set forth in any written notices of address change submitted to the Court or Attorney for the Debtor after the date on which any related proof of claim was filed; or, if the information described in clauses (i) or  (ii) is not available, (iii) at the addresses reflected in the Debtor's schedules of liabilities.

B.    <u>Distribution Dates</u>.  It is the intent of this Plan that the distribution shall occur as early as practicable following the Effective Date.

C.    <u>Cure Period</u>.   The failure by the Debtor to timely perform any term, provision or covenant contained in this Plan shall not constitute an Event of Default unless and until the Debtor has been given forty-five (45) days written notice of the alleged default and provided an opportunity to cure.  Until the expiration of the forty-five (45) day cure period, the Debtor shall not be deemed to be in default, and any performance or actions taken during such forty-five (45) day cure period shall be considered timely for all purposes.  Such written notice pursuant to the Plan provisions and the passage of the forty-five (45) day cure period shall constitute conditions precedent to bringing or filing any contested action by any person to enforce any right granted under this Plan.

# X.  ACCEPTANCE OR REJECTION OF PLAN;
## EFFECT OF REJECTION BY AN IMPAIRED CLASS

A.     Each Impaired Class Entitled to Vote Separately.  Each impaired class of claims shall be entitled to have the holders of claims therein vote separately as a class to accept or reject the Plan.

B.     Acceptance by a Class of Creditors.  Consistent with § 1126(c) of the Bankruptcy Code, and except as provided in § 1126(e) of the Bankruptcy Code, a class of claims shall have accepted the Plan if the Plan is accepted by holders of at least two-thirds (2/3) in dollar amount and more that one-half (1/2) in number of the allowed claims of that class that have timely and properly voted to accept or reject the Plan.

C.     Claimants Entitled to Vote.  Holders of impaired claims shall be entitled to vote if:

(1)     Such claim has been filed against the Debtor in a liquidated amount or has been listed on the Debtor's schedules other than as contingent, unliquidated or disputed, and as to which no proof of claim has been filed.  The claim shall be allowed solely for the purpose of voting on the Plan in the amount in which such claim has been filed or listed on the Debtor's schedules; or

(2)     Such claim has been filed against the Debtor or listed on the Debtor's schedules and is the subject of an existing objection filed by the Debtor, and is temporarily allowed for voting purposes by order of the Court in accordance with Bankruptcy Rule 3018.

If an impaired Claim has been filed in an undetermined amount, in which case the creditor holding such claim shall not be entitled to vote unless the Debtor and the holder of the claim agree on an amount for voting purposes or the Court enters an order setting the amount of the claim that the creditor may ballot.

Any creditor holding two or more duplicate claims shall be entitled to vote only one claim.

D.     Confirmation Hearing.  The Court will set a hearing on the confirmation of the Plan to determine whether the Plan has been accepted by the requisite number of creditors and whether the other requirements for confirmation of the Plan have been satisfied.

E.     Acceptances Necessary to Confirm the Plan.  At the Confirmation Hearing, the Court shall determine, among other things, whether the Plan has been accepted by each impaired class.  Under § 1126 of the Bankruptcy Code, an impaired class of Creditors is deemed to accept the Plan if at least two-thirds (2/3) in amount and more than one-half (1/2) in number vote to accept the Plan.  Further, unless there is unanimous acceptance of the Plan by an impaired class, the Court must also determine that class members will receive property with a value, as of the Effective Date of the Plan, that is not less than the amount that such class member would receive or retain if the Debtor was liquidated as of the Effective Date of the Plan under Chapter 7 of the Bankruptcy Code.

F. <u>Confirmation of Plan Without Necessary Acceptances</u>. The Bankruptcy Code provides that the Plan may be confirmed even if it is not accepted by all impaired Classes. In order to be confirmed without the requisite number of acceptances of each impaired class, the Court must find that at least one impaired class has accepted the Plan without regard to the acceptances of insiders, and the Plan does not discriminate unfairly against, and is otherwise fair and equitable, to such impaired class. In the event that any class votes against the plan, the Debtor hereby requests and moves the Court under the provisions of this Plan entitled "Cramdown," for confirmation pursuant to the "cramdown" provisions of § 1129(b) of the Bankruptcy Code. In connection therewith, the Debtor shall be allowed to modify the proposed treatment of the allowed claims in any class that votes against the Plan consistent with § 1129(b)(2)(A).

<h2 style="text-align:center;">XI. "CRAMDOWN" FOR IMPAIRED CREDITORS<br>NOT ACCEPTING THE PLAN</h2>

In respect to any class of creditors impaired but not accepting the Plan by the requisite majority in number or two-thirds (2/3) in amount, the proponent of this Plan requests the Court to find that the Plan does not discriminate unfairly and is fair and equitable in respect to each class of claims or interests that are impaired under the Plan and that the Court confirm the Plan without such acceptances by the said impaired classes. The Debtor will also request that the Court establish a value for any assets, the value of which is in dispute between the Debtor and any secured creditor, at a valuation hearing under Section 506 of the Bankruptcy Code, to be scheduled at the same time as the hearing on confirmation of the Plan.

<h2 style="text-align:center;">XII. EFFECT OF CONFIRMATION</h2>

A. Except as otherwise provided in the Plan, the confirmation of the Plan vests all of the property of the estate in the Debtor.

B. <u>Injunction</u>. As of the Confirmation Date, except as otherwise provided in the Plan or the Confirmation Order, all persons that have held, currently hold, or may hold a claim, equity interest, or other debt or liability that is treated pursuant to the terms of the Plan or that is otherwise enjoined pursuant to Section 1141 of the Code, are enjoined from taking any of the following actions on account of any such claims, equity interests, debtors or liabilities, other than actions brought to enforce obligations under the Plan: (i) commencing or continuing in any manner any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting, or enforcing any lien or encumbrance; (iv) asserting a setoff or right of recoupment of any kind against any debt, liability, or obligation; and/or (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation order. Notwithstanding the foregoing, the Plan does not release or waive any claims that the Debtor may have against any party in interest. This injunction shall not affect any creditor's ability to enforce rights against non-Debtors and non-Debtor property. This injunction shall also not affect the ability of any creditor holding a pre-petition judgment lien from renewing such judgment if the treatment of such creditor's claim extends beyond the life of the judgment. All payments on such judgments shall be properly credited when made against the claim and reported on a quarterly

basis to the applicable office of the Clerk of Superior Court. Upon completion of payments pursuant to Plan treatment any such judgment shall be immediately cancelled and marked as satisfied with the applicable office of the Clerk of Superior Court.

The confirmation of the Plan shall operate to enjoin any action against a guarantor or co-obligor of any claim settled or satisfied under the terms of the Plan during the term of the Plan.

C. Confirmation of the Plan shall satisfy all claims or causes of action arising out of any claim settled under the terms of the Plan.

## XIII.  RELEASE OF TITLE TO PROPERTY

A. <u>Vehicles</u>. Upon the satisfaction or other discharge of a security interest in a motor vehicle, mobile home, or in any other property of this estate in bankruptcy for which the certificate of title is in the possession of the secured party, the secured party shall within ten (10) days after demand and, in any event, within thirty (30) days of receipt of the payment in full pursuant to the Plan, execute a release of its security interest on the said title or certificate, in the space provided therefore on the certificate or as the Division of Motor Vehicles prescribes, and mail or deliver the certificate and release to the Debtor. Confirmation of this Plan shall impose an affirmative and direct duty on each such secured party to comply with the provision. This provision shall be enforced in a proceeding filed before the Bankruptcy Court and each such creditor consents to such jurisdiction by failure to file any timely objection to this Plan. Such an enforcement proceeding may be filed by the Debtor in this case either before or after the closing of this case. The Debtor(s) specifically reserve the right to file a motion to reopen this case under Section 350 of Title 11 of the United States Code to pursue the rights and claims provided for herein.

B. <u>Real Property</u>. Pursuant to N.C.G.S. § 45-36.9, upon the satisfaction or other discharge of a security interest in real property for which a creditor holds a properly secured mortgage, the secured party shall within thirty (30) days after demand or within thirty (30) days of payment in full pursuant to the Plan, submit for recording with the Office of the Register of Deeds for the applicable County a satisfaction of its security interest and mail or deliver the recorded satisfaction document or documents to the Debtor. The failure of any such party to comply with this section shall result in the imposition of statutory damages of $1,000.00, actual damages, costs and legal fees as provided for by Section 45-36.9(c) of the N.C. General Statutes. Confirmation of this Plan shall impose an affirmative and direct duty on each such secured party to comply with this provision. This provision shall be enforced in a proceeding filed before the Bankruptcy Court and each such creditor consents to such jurisdiction by failure to file any timely objection to this plan. Such an enforcement proceeding may be filed by the Debtor in this case either before or after the closing of this case. The Debtor specifically reserves the right to file a motion to reopen this case under Section 350(b) of Title 11 of the United States Code to pursue the rights and claims provided for herein including all remedies for damages and attorney fees under applicable State and Federal statutes.

## XIV.  APPLICATION OF PLAN PAYMENTS

A.     All payments made by the Debtor shall be applied as indicated in the respective treatment for each creditor, or if no such application of payments is specified, then payments shall be applied to principal and interest on a monthly basis according to the amortization schedule proposed for each creditor.  In the event that a creditor is entitled to costs and/or attorneys fees post-petition under Section 506(b) of the Code, such creditor must file an application in accordance with the Code and/or Bankruptcy Rules pertaining to approval of costs and/or attorney fees prior to such costs and/or attorneys fees becoming part of the creditor's allowed claim.  Confirmation of the Plan shall impose an affirmative duty and legal obligation on the holders and/or the servicers of any claims secured by liens, mortgages and/or deeds of trust to apply payments in the manner set forth in the Plan in accordance with Section 524(i).

B.     Confirmation of the Plan shall impose a duty on the holders and/or servicers of claims secured by liens on real property to apply the payments received from the Debtor to the month in which they were made under the plan or directly by the Debtor, whether such payments are immediately applied to the loan or placed into some type of suspense account and to otherwise comply with 11 U.S.C. § 524(i).

## XV.  RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction of these proceedings pursuant to and for the purposes of Sections 105(a) and 1127 of the Code and for, without limitation, the following purposes, inter alia:

1.     to determine any and all objections to the allowance of claims and/or interests;

2.     to determine any and all applications for allowance of compensation for periods prior to or after the Confirmation Date;

3.     to determine any and all applications pending on the Confirmation Date for the rejection and disaffirmance or assumption or assignment of executory contracts and the allowance of any claim resulting therefrom;

4.     to determine all controversies and disputes arising under or in connection with the Plan;

5.     to determine all applications, adversary proceedings and litigated matters pending on the Confirmation Date;

6.     to effectuate payments under, and performance of, the provisions of the Plan, including, but not limited to, future sales of personal and real property retained by the Estate;

7.     to determine such other matters and for such other purposes as may be provided for in the Confirmation Order;

8.      to determine all disputes regarding property of the Estate;

9.      to establish and adjust procedures for the orderly administration of the Estate;

10.      to determine matters that are subject to proceedings duly removed to the Bankruptcy Court;

11.      to replace the Debtor-in-Possession with a Trustee for good cause shown.

12.      to determine and resolve questions concerning the existence of defaults under the Plan;

13.      to modify the Plan pursuant to 11 U.S.C. § 1127(b);

14.      to correct any defect, to cure any omission, to reconcile any inconsistency in the Plan or Confirmation Order as may be necessary to carry out the purposes and intent of the Plan; and

15.      to issue any order necessary to carry out the Plan.

## XVI. MISCELLANEOUS PROVISIONS

A.      <u>Survival of Terms</u>.  The covenants, representations and agreements made in this Plan shall survive the Confirmation Date and the transactions contemplated herein.

B.      <u>Successors Bound</u>.  This Plan shall on the Consummation Date be binding upon and inure to the benefit of the respective heirs, successors and assigns of the Debtor, and the holders of claims and interests.

C.      <u>Controlling Law</u>.  This Plan shall be read and construed and take effect in all respects in accordance with the law as set forth in the United States Bankruptcy Code and the Rules promulgated thereunder.

D.      <u>Further Assurance</u>.  If at any time, the Debtor shall consider, or be advised, that any further releases, assurances or documents are reasonably necessary or desirable to carry out the provisions hereof, and the transactions contemplated herein, the holders of claims and the holders of interest shall, upon reasonable request, execute and deliver any and all documents and assurances, and do all things necessary or appropriate to carry out fully the provisions hereof.

E.      <u>Liens</u>.  Except as otherwise expressly set forth herein, all liens remaining in favor of any creditor in this action against the real property that arose prior to the filing of the petition shall be deemed to be released upon confirmation of the Plan.  The Debtor shall request and all parties shall provide such additional documentation as may be necessary to effectuate these releases.

F. _Incorporation of Disclosure_.  All the terms and conditions of the Disclosure Statement are incorporated herein by reference.

G. _Credit Reporting_.    Each Creditor who regularly makes reports to credit reporting bureaus shall ensure that their reports accurately reflect that the Debtor has filed bankruptcy and included all obligations owed to that Creditor in their Plan.  Further, all Creditors who make post-petition reports to credit reporting bureaus shall ensure that their reports accurately reflect the terms of all orders, including but not limited to cash collateral and orders confirming the Debtor's Plan.  Failure to make accurate reports to credit bureaus shall constitute a violation of automatic stay provisions of 11 U.S.C. § 362, if made post-petition but pre-confirmation.  Alternatively, if erroneous reports are made post-confirmation, then those reports shall be treated as violations of the Order Confirming Plan after notice and a hearing on the alleged violations.  The Debtor shall be exempted from the Fair Credit Reporting Act in pursuing a remedy against a Creditor for erroneous credit reporting and the Bankruptcy Court shall retain jurisdiction to hear such matters.

H. _Adversary Proceedings._  The Debtor reserves the right to begin or continue any adversary proceedings permitted under Title 11, United States Code, and the applicable Bankruptcy Rules.

I. _Modification of Plan_.  The Debtor may submit modifications of the Plan to the Court at any time prior to confirmation pursuant to § 1127.

J. _Default Remedies_.   Any creditor may serve notice of a default on the Debtor and Debtor's counsel.  Such notices shall be in writing and delivered by registered mail to the Debtor.  The Debtor shall have forty-five (45) days to cure the default.  If the default is not cured, any creditor may take such action as the Code permits and any pre-petition rights shall re-vest in any such creditor, including but not limited to the creditor having the right to pursue the full amount of its pre-petition claim, less credit for any payments made by the Debtor up to the date of default.  This provision shall be cumulative with other rights and remedies provided to parties in interest under the Bankruptcy Code.

K. _Granting of Liens_.   If an existing lien on any property of the Debtor contains language providing that the granting of a lien on that property shall be deemed an event of default, the granting of a lien in accordance with this Plan shall not be deemed an event of default.

L. _Cancellation of Liens_.  Except as otherwise provided specifically in this Plan, any and all prepetition liens encumbering any of the Debtor's assets, whether deeds of trust, UCC-1 financing statements, or otherwise, shall be deemed canceled of record upon the entry of the Confirmation Order.  The Debtor shall be entitled to present this Plan, and the Confirmation Order to any public official charged with the maintenance of records regarding liens, and direct said official to cancel said liens of record.

# XVII.  DISCHARGE

Upon completion of payments to Classes 1, 2, 3, and 11, the Debtor and the Estate will be discharged from all Claims and Liens and Liens expressly provided for in the Plan.  The discharge will be fully effective against all Creditors regardless of whether they have voted to accept or reject the Plan and regardless of whether the Plan is confirmed by consent or by resort to the provisions of section 1129(b) of the Bankruptcy Code.  However, even though no discharge will be entered until all payments to Classes 1, 2, 3, and 11 are completed, the Debtor will seek to have the case closed upon substantial consummation as set forth in § 1101(2).  Further, the Debtor will seek to have the case automatically re-opened pursuant to § 350(b) without the payment of a fee, upon the filing and service on all creditors and the Bankruptcy Administrator, of a Notice of Completion of Plan Payments and Request for Entry of Discharge, allowing all parties twenty (20) days to file a response.

End of Document